IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IPSEN BIOPHARM LTD., IPSEN PHARMA SAS, and IPSEN SA, § § § § § § § § § § § | |
| Petitioner, | |
| v. | CIVIL ACTION NO.   3:23-cv-02593 |
| GALDERMA LABORATORIES, L.P., GALDERMA RESEARCH & DEVELOPMENT, LLC, | |
| Respondents. | |

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner Ipsen Biopharm Ltd. ("Ipsen Biopharm"), Ipsen Pharma SAS ("Ipsen Pharma"), and Ipsen SA (together, "Ipsen") file this petition to confirm an arbitral award issued by the International Chamber of Commerce ("ICC") in *Galderma SA et al. v. Ipsen Biopharm Ltd. et al.*, Case No. 26409/PAR (the "ICC Arbitration") against Respondents Galderma Laboratories, L.P. ("Galderma Labs") and Galderma Research & Development, LLC ("Galderma R&D") (together, "Respondents"). In support thereof, Ipsen alleges as follows.

## INTRODUCTION

1.      Ipsen previously requested the Court's assistance in enforcing Ipsen's rights under its agreement with Galderma S.A. ("Galderma"), the parent company of Galderma Labs and Galderma R&D, relating to the development of a botulin toxin product, QM-1114. Shortly after Ipsen filed suit, Galderma Labs and Galderma R&D agreed to join in and be bound by the pending ICC Arbitration in Brussels between Ipsen and Galderma. As a result, the Court concluded that the federal dispute was moot and dismissed Ipsen's claims in favor of the Brussels arbitration

1

under the doctrine of *forum non conveniens*. *Ipsen Biopharm Ltd. v. Galderma Laboratories, L.P.*, et al. Civil Action No. 4:22-cv-00662-O, D.I. 58 (March 8, 2023).

2.   On September 27, 2023, the ICC issued its final award (the "ICC Award") in the ICC Arbitration.[1] The Tribunal's award states in relevant part that (1) Galderma Labs and Galderma R&D breached the parties' agreement by filing a regulatory application in their own name with the U.S. Food and Drug Administration ("FDA") seeking approval to market QM-1114; (2) upon Ipsen Biopharm's first demand, Galderma Labs and Galderma R&D must assign to Ipsen all regulatory applications filed with the FDA for QM-1114 in Galderma's name and all regulatory approvals so obtained; and (3) Galderma Labs and Galderma R&D are prohibited from filing any future applications with the FDA for QM-1114 in their own name.

3.   Ipsen now seeks a judgment from the Court confirming the ICC Award under 9 U.S.C. § 207, which grants the Court the power to confirm international arbitration awards.

## THE PARTIES

4.   Petitioner Ipsen Biopharm is a company organized under the laws of the United Kingdom with its principal place of business at Ash Rd N, Wrexham LL13 9UF, United Kingdom.

5.   Petitioner Ipsen Pharma is a *société par actions simplifiée* organized under the laws of France with its registered office at 65, quai Georges Corse, 92100 Boulogne-Billancourt, France.

6.   Petitioner Ipsen SA is a *société anonyme* organized under the laws of France with its registered office at 65, quai Georges Corse, 92100 Boulogne-Billancourt, France.

---

[1] Ipsen is not aware of Galderma's position as to the confidentiality of the ICC Award. To the extent Galderma informs Ipsen that the ICC Award can be filed with the Court publicly, Ipsen will promptly supplement the record with a copy of the ICC Award. Otherwise, Galderma will seek to have the ICC Award sealed.

7.      Ipsen Biopharm and Ipsen Pharma are each corporate subsidiaries of Ipsen SA, which is in the business of developing, manufacturing, and marketing pharmaceutical products, particularly in the field of neurosciences.

8.      Respondent Galderma Labs is a Texas limited partnership registered in the State of Texas with its principal place of business at 2001 Ross Avenue, Suite 1600, Dallas, Texas 75201. Galderma Labs's registered agent for service of process is CCS Global Solutions, Inc. located at 3610-2 North Josey Lane, Suite 223, Carrollton, Texas 75007.  Upon information and belief, Galderma Labs's partners are Galderma Limited, LLC and Galderma General, LLC, both of which are incorporated and registered to do business in Delaware with a principal place of business at 2001 Ross Avenue, Suite 1600, Dallas, Texas 75201.

9.      Respondent Galderma R&D is a Delaware limited liability company registered to do business in the State of Texas with a principal place of business at 2001 Ross Avenue, Suite 1600, Dallas, Texas 75201.  Galderma R&D's registered agent for service of process is CCS Global Solutions, Inc. located at 13 West Main Street P.O. Box 953, Felton, Delaware 19943.

10.     Respondents are U.S.-based subsidiaries of Galderma S.A., a Swiss pharmaceutical company specializing in dermatological treatments and skin care products.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action pursuant to 9 U.S.C. § 203 because this is a civil action seeking confirmation of an award rendered in an arbitration under the Convention on the Enforcement and Recognition of Foreign Arbitral Awards (the "Convention"). June 10, 1958, 84 Stat. 692, 21 U.S.T. 2517.  The arbitral award at issue arises out of a contractual, commercial obligation falling with the scope of 9 U.S.C. § 2 as incorporated into 9 U.S.C. § 203.

12. On information and belief, the Court also has jurisdiction over the subject matter of this action because there is diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(a) and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13. Petitioners are citizens of foreign states, the United Kingdom and France.

14. For purposes of evaluating diversity of citizenship, Galderma Labs is a citizen of Delaware and Texas. The citizenship of Galderma Labs, a limited partnership, is determined by the citizenship of each partner of the entity. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). Upon information and belief, Galderma Labs's partners are Galderma Limited, LLC and Galderma General, LLC, which are incorporated in Delaware and have a principal place of business at 2001 Ross Avenue, Suite 1600, Dallas, Texas 75201. The citizenship of a limited liability company is also determined by the citizenship of each member of the entity. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). Upon information and belief, Galderma Services, Inc. is the sole member of both Galderma Limited, LLC and Galderma General, LLC. As a corporation, Galderma Services, Inc. is deemed to be a citizen in (a) every state where it is incorporated; and (b) the state where it has its principal place of business. 28 USC § 1332(c)(1). Galderma Services, Inc. is a corporation incorporated and registered to do business in Delaware with a principal place of business at 2001 Ross Avenue, Suite 1600, Dallas, Texas 75201. Accordingly, Galderma Labs is also a citizen of Delaware and Texas.

15. For purposes of evaluating diversity of citizenship, Galderma R&D has the citizenship of its members. Upon information and belief, the members of Galderma are citizens of Delaware and/or Texas.

16. This Court has personal jurisdiction over Galderma Labs because Galderma Labs is a partnership organized under Texas law, is registered to do business in the State of Texas and

has appointed a registered agent for service of process in the State of Texas. Moreover, Galderma Labs maintains a place of business in the State of Texas and sells and distributes pharmaceutical, aesthetic, and/or dermatological products throughout the United States, including Texas and/or has engaged in systematic and continuous business contacts within the State of Texas.

17. This Court has personal jurisdiction over Galderma R&D and Galderma Labs because they maintain a principal place of business at 2001 Ross Avenue, Suite 1600, Dallas, Texas 75201.

18. Venue is proper in the Northern District of Texas pursuant to 9 U.S.C. § 204 because save for the arbitration agreement, the underlying action could have been brought here. Respondents each reside in the Northern District of Texas, and accordingly, this would have been a proper forum pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

19. Since 2007, Ipsen and Galderma have been partners in the field of aesthetic and dermatology products. Over the course of their partnership, Ipsen and Galderma have successfully developed and marketed two prescription drug products containing botulinum toxins worldwide and in Europe under the brand names Dysport® and Azzalure®, respectively.

20. On July 9, 2014, Ipsen and Galderma entered into an agreement for the purposes of developing, manufacturing, and/or selling a new drug product called QM-1114 (Botulinum Toxin Type A), in various jurisdictions, including the United States ("QM Agreement").

21. In relevant part, Section 6.5 of the QM Agreement provides:

> This Agreement shall be governed by the law of Belgium. All disputes arising out of or in connection with the present Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules. The seat of arbitration shall be Brussels and the language of arbitration shall be English.

22. On July 26, 2021, Galderma filed a Request for Arbitration against Ipsen before the ICC in Belgium seeking *inter alia* a declaration that Ipsen breached the QM Agreement, rescission of the QM Agreement, and compensation for damages sustained as a result of the purported breach and costs associated with the arbitration proceeding. Ipsen filed counterclaims seeking, among other things, to bar Galderma from pursuing an application with the FDA to sell QM-1114 in the United States. Consistent with the QM Agreement, the ICC appointed three arbitrators to hear the dispute in the fourth quarter of 2021.

23. Galderma Labs and Galderma R&D were not original parties to the ICC Arbitration. During the pendency of the ICC Arbitration, and in response to the filing of a Biologics License Application ("BLA") 761311 with the FDA for approval to market QM-1114 in the U.S. by Galderma R&D, Ipsen filed a complaint for injunctive relief in this Court to restore and maintain the status quo pending the outcome of the ICC Arbitration. *Ipsen Biopharm Ltd. v. Galderma Laboratories, L.P. et al.*, Civ. A. No. 4:22-cv-00662-O. Galderma Labs and Galderma R&D then agreed to be bound by the ICC Arbitration. In light of these facts, on March 8, 2023, the Court concluded that the dispute before it was moot and dismissed Ipsen's complaint under the doctrine of *forum non conveniens* in favor of the ICC Arbitration. Mem. Op. & Order, Civ. A. No. 4:22-cv-00662-O, ECF No. 58 (March 8, 2023).

24. On April 3, 2023, Galderma Labs and Galderma R&D joined the arbitration, following which the Tribunal held a hearing on all parties' claims and counterclaims in May 2023.

25. On September 27, 2023, the Tribunal issued its final award, which stated:

1. the Tribunal has jurisdiction over Ipsen Biopharm LTD, Ipsen Pharma SAS and Ipsen SA;

2. under the Agreement Galderma SA has the right to decide on QM-1114's regulatory strategy (including but not limited to whether regulatory approval should be sought on the basis of LD 50 or CBA), provided its strategy is in accordance with the applicable legal rules;

3. by refusing to enable Galderma SA, Galderma Laboratories L.P., Galderma Research & Development LLC, Galderma Canada Inc. and Galderma Australia PTY Ltd. to file the regulatory applications for QM-1114 in Ipsen's name in the US, Canada and Australia, Ipsen Biopharm LTD, Ipsen Pharma SAS and Ipsen SA have breached the Agreement;

4. Galderma SA, Galderma Laboratories L.P., Galderma Research & Development LLC, Galderma Canada Inc. and Galderma Australia PTY Ltd. were not entitled to file the regulatory applications for QM-1114 in the US, Canada and Australia in their own name and by doing so, they breached the Agreement;

5. if in breach of the Agreement Ipsen Biopharm LTD, Ipsen Pharma SAS and Ipsen SA refuses to enable Galderma to file future regulatory applications for QM-1114 in Ipsen's name in any of the licensed territories, for whatever reason, Galderma SA, Galderma Laboratories L.P., Galderma Research & Development LLC, Galderma Canada Inc. and Galderma Australia PTY Ltd. will not be entitled to make such filing in their own name;

6. upon Ipsen Biopharm LTD's first demand, Galderma SA, Galderma Laboratories L.P., Galderma Research & Development LLC, Galderma Canada Inc. and Galderma Australia PTY Ltd. shall assign to Ipsen all regulatory applications filed for QM-1114 in their own name and all regulatory approvals so obtained;

7. Galderma SA, Galderma Laboratories L.P., Galderma Research & Development LLC, Galderma Canada Inc. and Galderma Australia PTY Ltd. shall abstain in the future from filing in their own name any applications for QM-1114 in any of the licensed territories;

8. Ipsen Biopharm LTD, Ipsen Pharma SAS and Ipsen SA shall refrain from taking any action that prevents, delays, or otherwise obstructs the filing, regulatory assessment and approval, and subsequent commercialization of QM-1114 for dermatological indications, unless such action is justified by Galderma's breach of any applicable legislation or agreement between the Parties;

9. Ipsen Biopharm LTD, Ipsen Pharma SAS and Ipsen SA shall procure, as far as is legally possible, that their Affiliates take any action, or refrain from taking any action, as may be necessary to ensure full compliance with the Tribunal's orders.

10. Each Pary shall bear its own costs as well as 50% of the ICC Costs.

11. All other requests and claims in this arbitration are dismissed.

26. Section 6 of the ICC Award's relief section states that upon Ipsen's first demand, Galderma "shall assign to Ipsen all regulatory applications filed for QM-1114 in their own name and all regulatory approvals so obtained."

27. On October 5, 2023, and in accordance with Section 6 of the ICC Award, Ipsen sent a demand letter to Galderma requesting that it transfer the QM-1114 BLA to Ipsen as well as copies of relevant documentation and information pertaining to the QM-1114 BLA.

28. Galderma has failed to transfer the regulatory application, instead attempting to place restrictions and conditions on the transfer that were not awarded by the Tribunal.

## **MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT**

29. Ipsen re-alleges and incorporates Paragraphs 1 through 28 as if fully set forth herein.

30. The Convention governs enforcement of international arbitral awards. Convention, Art. I, June 10, 1958, 84 Stat. 692, 21 U.S.T. 2517; *see also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). Chapter 2 of the Federal Arbitration Act ("FAA") provides the implementing legislation for the Convention in relation to arbitral disputes involving at least one foreign party. 9 U.S.C. § 201. Chapter 1 of the FAA applies to awards under the Convention to the extent it does not conflict with Chapter 2. 9 U.S.C. § 208; *see also Todd v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010).

31. The FAA provides that the following agreements and awards fall under the Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An

> agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

32. The ICC Award arises from the QM Agreement entered into by Ipsen and Galderma, which is a commercial agreement for the purposes of developing, manufacturing, and/or selling the QM-1114 drug product, in various jurisdictions. Petitioners are neither incorporated, nor have a principal of business, in the United States. Accordingly, Chapter 2 of the FAA applies to and governs the confirmation of the ICC Award.

33. The FAA also sets forth certain requirements for confirming arbitral awards. In relevant part, the FAA provides that:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

34. The petition meets all the requirements for confirmation of the ICC Award. The Tribunal issued the ICC Award within three years of the date of this petition, the Court has jurisdiction over the subject matter and personal jurisdiction over the Respondents as described in Paragraphs 11-18, and there are no bases to refuse or defer recognition of the enforcement of the ICC Award as specified in the Convention.

9

35. Section 13 of the FAA also requires that a party moving for an order to confirm an arbitral award to attach "the agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award." 9 U.S.C. § 13.

36. The agreement to arbitrate is contained in the QM Agreement, the relevant portions of which are attached hereto as Exhibit A, and the relevant arbitral provision is § 6.5. No additional arbitrators were appointed or selected for this matter, and no extensions of time for the arbitrators to render their award have been given. No applications to confirm, modify, or correct the award have been made in this matter.

37. All requirements to confirm the ICC Award under the FAA have been met. Accordingly, pursuant to 9 U.S.C. § 207, Ipsen seeks confirmation of the ICC Award and judgment in its favor.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations and facts set forth above, Ipsen requests judgment against Galderma Labs and Galderma R&D as follows:

a. confirmation of the ICC Award as a Judgment of this Court against Galderma Labs and Galderma R&D;

b. an order that Galderma Labs and Galderma R&D:

(i) assign BLA 761311 to Ipsen Biopharm Ltd.;

(ii) transfer a complete copy of BLA 761311, including all supplements, amendments, records, and regulatory dossiers related thereto, and a copy of all communications exchanged with the FDA concerning BLA 761311;

    (iii) be enjoined from filing any future regulatory applications with the FDA in their own name, which seek approval to market QM-1114;

c. any and all further relief this Court deems just and proper;

d. an award of costs.

Respectfully submitted,

Dated: November 22, 2023  By: */s/ Scott Wiehle*

| Of Counsel (*Pro hac vice* to be filed): | Chad Arnette |
|---|---|
| | Texas Bar No. 24014751 |
| Martin J. Black | Scott Wiehle |
| DECHERT LLP | Texas Bar No. 24043991 |
| Cira Centre | KELLY HART & HALLMAN LLP |
| 2929 Arch Street | 201 Main Street, Suite 2500 |
| Philadelphia, PA 19104-2808 | Fort Worth, TX 76102 |
| (215) 994-2000 | Tel.:   817-332-2500 |
| martin.black@dechert.com | Fax.:  817-878-9280 |
| | chad.arnette@kellyhart.com |
| Katherine A. Helm, Ph.D. | scott.wiehle@kellyhart.com |
| DECHERT LLP | |
| Three Bryant Park | |
| 1095 Avenue of the Americas | **ATTORNEYS FOR PETITIONERS** |
| New York, NY 10036-6797 | **IPSEN BIOPHARMA LTD, IPSEN** |
| (212) 698-3500 | **PHARMA SAS, and IPSEN SA.** |
| khelm@dechert.com | |

Pejmon Pashai
DECHERT LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 261-3300
pejmon.pashai@dechert.com